ORIGINAL

15 MAG 1638

Approved: _____
         DINA MCLEOD
         Assistant United States Attorney

Before:  THE HONORABLE ANDREW J. PECK
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

        - v. -                    :

RASHAAD CONYERS,                  :

            Defendant.            :

- - - - - - - - - - - - - - - - - - -x

SEALED
COMPLAINT    **DOC #__1__**

Violation of
18 U.S.C. §§ 922(g)(1)
and (2)

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

        ANTOINETTE GUZMAN, being duly sworn, deposes and says that she is a Criminal Investigator with the U.S. Attorney's Office for the Southern District of New York, and charges as follows:

## COUNT ONE

        1.   On or about May 12, 2015, in the Southern District of New York and elsewhere, RASHAAD CONYERS, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess, in and affecting commerce, a firearm, to wit, a Hi-Point, Model JHP, .45 caliber semi-automatic pistol, which previously had been shipped and transported in interstate and foreign commerce.

        (Title 18, United States Code, Sections 922(g)(1) and (2).)

        The bases for my knowledge and for the foregoing charges are, in part, as follows:

        2.   I am a Criminal Investigator for the U.S. Attorney's Office for the Southern District of New York and I have been personally involved in the investigation of this

matter.  This affidavit is based upon my personal participation
in the investigation of this matter, my conversations with law
enforcement agents, witnesses and others, as well as my
examination of reports, records, and video footage.  Because
this affidavit is being submitted for the limited purpose of
establishing probable cause, it does not include all the facts
that I have learned during the course of my investigation.
Where the contents of documents and the actions, statements and
conversations of others are reported herein, they are reported
in substance and in part, except where otherwise indicated.

      3.    Based on my conversations with two NYPD officers
("Officer-1" and "Officer-2," respectively; the "Officers,"
collectively) who have participated in this investigation, I
have learned, among other things, the following:

      a.    On or about May 12, 2015, at approximately
11:00 p.m., the Officers were inside the lobby of a building in
the vicinity of 301 East 143rd Street ("the Building"), a
building in the Patterson Houses in the Bronx.  While inside the
lobby, the Officers heard approximately four gunshots.  The
Officers immediately exited the Building.

      b.    When the Officers exited the Building, they
each observed two men, one in a white t-shirt, later identified
as the defendant, RASHAAD CONYERS, and one in a black sweatshirt
("UM-1"), approximately 40 feet away, in the vicinity of 328
East 145th Street.  Conyers and UM-1 appeared to be crouching or
hunched over.

      c.    Officer-1 then observed that CONYERS had
what appeared to be a large, black firearm in his waistband
("Firearm-1").  Officer-1 could see the outline of the firearm
against CONYERS's white t-shirt.  Officer-1 saw CONYERS pull the
firearm out of his waistband and toss it forward.  Officer-2 saw
CONYERS reach toward his back, pull out an object, and toss it.
Officer-2 believed the object to be a firearm, because Officer-2
saw what appeared to be a gun handle.

      d.    Shortly thereafter, the Officers each also
observed UM-1 make a tossing motion from his waistband.

      e.    Officer-2 then shouted, "Police, don't
move."  The Officers then observed CONYERS and UM-1 begin to run
down East 145th Street, toward Third Avenue.  The Officers
pursued CONYERS and UM-1 on foot and radioed for backup.

f.   An officer in another police car, who was responding to the Officers' radio calls for assistance, apprehended CONYERS at the intersection of East 145th Street and Third Avenue.

g.   Officer-1 went back to the area where CONYERS had made the tossing motion to look for Firearm-1.

h.   Officer-2 and another police officer continued to pursue UM-1 down Third Avenue and onto East 144th Street, but were unable to apprehend UM-1.  Officer-2 then headed back to East 145th Street to assist in the search for Firearm-1.

i.   Officer-1 smelled gunpowder when searching for Firearm-1.  Officer-1 found Firearm-1 almost immediately after beginning the search and recognized it as the large, black firearm that Officer-1 had seen CONYERS toss to the ground.  Officer-1 found Firearm-1 along a fence in the vicinity of 338 East 145th Street.

j.   Members of NYPD's evidence collection unit ("ECT") arrived to retrieve Firearm-1.  The Officers proceeded to the 40th Precinct.  After conferring with detectives at the 40th Precinct, the Officers returned to the area where CONYERS and UM-1 had each made tossing motions, to search for a second gun.

k.   Another police officer ("Officer-3") spotted a second firearm ("Firearm-2") approximately 10 feet away from where Firearm-1 was recovered.  ECT then arrived to retrieve Firearm-2.

l.   ECT later retrieved several spent shell casings ("the Shell Casings") and one unspent round ("the Unspent Round") in the vicinity of 308 East 145th Street.

4.   Based on my personal observations, my review of photographs taken at the scene, my experience as a criminal investigator, and my communications with a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms, I have learned among other things, the following:

m.   Firearm-1 is a Hi-Point, Model JHP, .45 caliber semi-automatic pistol.

3

n.      Firearm-2 is a Rohm, Model RG-10, .22 caliber revolver, with a beige handle.

o.      The Shell Casings and the Unspent Round are .45 caliber.

p.      Both Firearm-1 and Firearm-2 were not manufactured in New York state.

5.      Based on my conversations with an NYPD detective ("Detective-1") who has participated in this investigation, I have learned, among other things, the following:

q.      On or about May 13, 2015, Detective-1 and Detective-1's partner interviewed RASHAAD CONYERS, the defendant, at the 40th Precinct, after giving CONYERS his Miranda warnings.

r.      CONYERS denied that any other individual was with him on East 145th Street around the time of the incident and denied having a firearm.

s.      Video surveillance obtained from the Patterson Houses shows CONYERS raising his arm and pointing it, as though firing a weapon.

6.      I have reviewed criminal history records pertaining to RASHAAD CONYERS, the defendant, which show that on or about January 26, 2009, in New York Supreme Court, Bronx County, CONYERS was convicted of Attempted Murder, a Class B Felony, in violation of New York Penal Law 125.25.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of RASHAAD CONYERS, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

4

_____
Criminal Investigator Antoinette Guzman
U.S. Attorney's Office for the Southern
District of New York

Sworn to before me this
13th day of May, 2015

_____
THE HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5